UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PARKER,

         Plaintiff,

v.

UNKNOWN REDDIN, *et al.*,

         Defendants.

                                      /

Case No. 1:17-cv-956

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants Ryan Reddin, Russell Klatt, Timothy Stevenson and Joseph Stephan (ECF No. 53).

### I.   Plaintiff's complaint

Plaintiff filed this complaint regarding events which occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sued MDOC Director Heidi Washington and the following DRF officials: Correctional Officers (unknown) Reddin, (unknown) Stephenson [Stevenson], and (unknown) Stephan; Prison Counselor (unknown) Klatt; and Resident Unit Manager (unknown) Andersen. Plaintiff's claims arose between July 16, 2017 and August 29, 2017. After screening the complaint, the Court dismissed defendants Washington and Andersen for failure to state a claim and ordered the complaint be served against defendants Reddin, Klatt, Stevenson, and Stephan. Opinion (ECF No. 5, PageID.5);

1

Order (ECF No. 6).  As discussed, *infra*, plaintiff's remaining claims involve denial of access to the courts, retaliation, and cruel and unusual punishment.

### III. Motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Finally, plaintiff filed a "verified" complaint, meaning that his allegations have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

### B. Section 1983

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### C. Denial of access to the courts

Plaintiff claims that on August 24, 2017, defendant CO Stevenson violated his constitutional right to access the courts because during a cell search, Stevenson destroyed an affidavit from prisoner Walls "who observed C/O Kalnins destroy plaintiffs [sic] property on July 16, 2017." Compl. (ECF No. 1, PageID.8). "Prisoners have a First and Fourteenth Amendment right of access to the courts." *Sims v. Landrum*, 170 Fed. Appx. 954, 956 (6th Cir. 2006), citing *Lewis v. Casey*, 518 U.S. 343, 354 (1996). "A prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). "In assessing whether a State has violated that right, we ask whether the

3

claimant has demonstrated an 'actual injury,' and, if so, whether the claimant has alleged that more than mere negligence by the state actor caused the injury." *Sims*, 170 Fed. Appx. at 956, citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) and *Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir.1993). The nature of the underlying cause of action "is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Finally, a plaintiff "must plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578. In short, a plaintiff "must plead and prove prejudice stemming from the asserted violation." *Pilgrim*, 92 F.3d at 416.

Here, plaintiff has failed to establish that he was denied access to the courts. First, plaintiff's claim does not involve a direct appeal, a habeas corpus application, or a civil rights claim. *See Thaddeus-X*, 175 F.3d at 391. Rather, plaintiff characterized the underlying cause of action as "a state tort against C/o Kalnins for destruction of plaintiffs [sic] property." Compl. at PageID.11. Plaintiff alleged that as a result of CO Stevenson's destruction of his "legal mail", he "can no longer file a state tort against C/o [sic] Kalnins for destruction of plaintiff's property." Compl. at PageID.11. Second, plaintiff was not prejudiced, *i.e.*, he has not established how Stevenson's action prevented him from filing a complaint against non-party CO Kalnins in state court. Accordingly, defendant Stevenson should be granted summary judgment as to plaintiff's claim that he denied plaintiff access to the courts.

    **D.**    **Retaliation**

    **1.**    **Legal standard**

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct;  (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

2.   **CO Reddin**

On July 16, 2017, plaintiff filed a grievance against CO Kalnins, DRF 17-07-1768-17G ("1768") for conducting an improper search during which Kalnins opened plaintiff's "toothpastes" and "bags of chips" (ECF No. 54-3, PageID.247).  Two days later, CO Reddin issued plaintiff a misconduct violation for being out of place.  Misconduct Report (ECF No. 1-1, PageID.17). Plaintiff was found guilty of a misconduct and given a sanction of five days loss of privilege.  *See* Misconduct Hearing Report (ECF No. 1-1, PageID.18).  The guilty finding was reversed on appeal because the hearing was not held within the stated time limits (7 days after review).  Appeal (ECF No. 1-1, PageID.19) (Sept. 1, 2017).   Based on these incidents, plaintiff alleged that CO Reddin issued him a false and retaliatory misconduct violation because plaintiff had filed a grievance against CO Kalnins.  Compl. (ECF No. 1, PageID.6)

A prisoner can meet the first element of a retaliation claim by filing a grievance, because "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."  *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (internal quotation marks and brackets omitted).  However, prisoners cannot base a retaliation claim on a "frivolous" grievance or grievances which result from the "[a]busive or manipulative use of a grievance system.":

5

>As to the first element, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Violett v. Reynolds*, 76 Fed. Appx. 24, 27 (6th Cir. 2003) ("Filing grievances through the inmate grievance mechanism is protected conduct."). However, the right to file grievances is protected only insofar as the grievances are not "frivolous."  *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," [*King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)], and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 Fed. Appx. 520, 525 (6th Cir. 2002).

*Maben*, 887 F.3d at 264.  In this regard, a grievance is frivolous if it alleges conduct which fails to state a claim upon which relief may be granted.  *See Herron*, 203 F.3d at 415 (a prisoner's act of filing a grievance constitutes protected conduct "only to the extent that the underlying claims ha[ve] merit").

>In addition,

>>Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*.  *Ziegler v. State of Michigan*, 90 Fed. Appx. 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White-Bey v. Griggs*, 43 Fed. Appx. 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, [2000 WL 1434456] at *1-2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus-X v. Love*, 215 F.3d 1327, at *2-3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]").

*Id.* at 264-65.

Here, plaintiff filed a grievance against non-party CO Kalnins for conducting an "improper and harassing" cell search which resulted in damage to the box toothpaste and some bags of potato chips.  The grievance was denied after it was determined that the COs were

6

performing a shakedown as allowed under Policy Directive 04.07.112, and that while CO Kalnins opened one box of toothpaste to inspect it, no potato chips were seen or searched. Grievance 1768 (ECF No. 54-3, PageID.247-248). The grievance interviewer noted that plaintiff came to him immediately after the shakedown, stating that a toothpaste box was opened, but "at no time did he say anything about chips." *Id*. at PageID.248. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) ("[r]equiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court" and "improve[s] the quality of suits that are filed by *producing a useful administrative record* "(emphasis added)). Based on this record, the Court concludes that plaintiff did not engage in protected conduct when he filed Grievance 1768, because the grievance involved a *de minimis* claim that a toothpaste box and bags of potato chips were opened during a shakedown. *See Maben*, 887 F.3d at 264-65. For that reason, defendant Reddin should be granted summary judgment on this claim.

### 3. ARUS Klatt

Plaintiff alleged a retaliation claim against ARUS Klatt based upon the following incidents. On July 18, 2017, plaintiff filed a grievance against Klatt, related to "threats and retaliation" which occurred when Klatt asked plaintiff why he filed a grievance against Kalnins over the toothpaste box/potato chip incident and allegedly told plaintiff that "you have a chip on your shoulder and if you don't wont [sic] your [sic] cell tore up everyday [sic] I would lay back." Compl. (ECF No. 1, PageID.6-7) (identifying the July 18, 2017 grievance against Klatt as DRF 17-07-1806-17A). Plaintiff alleged that Klatt retaliated against him eight days later by transferring plaintiff to another cubicle area in the same housing unit and stating "let's see how much work [plaintiff] gets done without sleep." According to plaintiff, this was a retaliatory transfer because

7

Klatt moved him from a "peaceful cube to a [sic] extremely loud and obnoxious cube where plaintiff couldn't sleep or focus to do his legal work." Compl. at PageID.7.

Plaintiff's retaliation claim fails because there was no adverse action. "Cell assignments are a normal part of prison life, and thus typically do not amount to an adverse action." *LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). The fact that plaintiff was transferred to a "loud and obnoxious cube" does not transform a routine prison matter into a federal constitutional violation. *See, generally, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("the Constitution does not mandate comfortable prisons"). Accordingly, ARUS Klatt should be granted summary judgment on this claim.

**4. CO Stevenson and CO Stephan**

Defendants have summarized plaintiff's claims against these two defendants as follows:

> On August 24, 2017, Parker alleges that C/O Stevenson approached him in his cubicle and asked him whether he was going to sign off on the grievance Parker had filed against ARUS Klatt. Once Parker indicated in the negative, C/O Stevenson instructed him to leave, told him to stop filing grievances or his "black ass" would be set up with weapons and dangerous contraband. According to Parker, C/O Stevenson then searched his cubicle, leaving it in a state of disarray and destroyed an affidavit related to a potential lawsuit. (ECF No. 1, PageID.8 at ¶27). Two days later, on August 26th, C/O Stephan called Parker out and asked why Parker had lied about C/O Stevenson in his grievance. When Parker denied that he lied, both C/O Stephan and Stevenson referred to Parker as a "f***ing Ni**er". (ECF No. 1, PageID.8 at ¶2). Finally, two more days later, on August 28th, C/O Stevenson stated to Parker, "I'm still going to kick your ass you little rat mother****er who likes to write grievances." (ECF No. 1, PageID.9 at ¶29).

Defendants' Brief (ECF No. 54, PageID.188-189).

According to plaintiff, the relevant protected conduct was his filing of grievance DRF 17-07-1889-17A ("1889") on July 26, 2017. In this grievance, plaintiff complained that ARUS Klatt transferred him a different cubicle at the prison. *See* Grievance 1889 (ECF No. 54-3, PageID.249-253). Plaintiff alleged that nearly one month later, on August 24, 2017, CO Stevenson retaliated against him by "setting up" plaintiff's cubicle with "weapons and dangerous contraband." Compl. at PageID.8. Plaintiff alleged that CO Stevenson took this retaliatory action because plaintiff refused to "sign off" on Grievance 1889. *Id*. In this regard, plaintiff alleged that he left the cubicle and "returned shortly thereafter to disarray." *Id*. In addition, plaintiff found "a destroyed affidavit which was for the upcoming litigation from a prisoner Walls," *i.e.*, the prisoner who observed non-party CO Kalnins open a toothpaste box and plaintiff's potato chips back on July 16, 2017." *Id*.

In his affidavit, CO Stevenson stated that he performed a search of plaintiff's cubicle pursuant to MDOC Policy Directive (PD) 04.04.110 ¶U, which requires that he conduct at least two cell searches per shift. Stevenson Aff. at PageID.294-295; PD 04.04.110 ¶U (providing in pertinent part that "Each Corrections Officer assigned to a housing unit shall conduct thorough and complete searches of at least two randomly selected cells/rooms/living areas per shift, except on third shift or due to exigent circumstances (e.g., mobilization) as identified by the Warden or designee.") (PageID.307). Stevenson denied that he left plaintiff's cubicle "in disarray" or that he confiscated or destroyed any legal materials. Stevenson Aff. at PageID.294-295. However, Stevenson stated that he found two items of contraband: a homemade bowtie and an altered JP5 player holder, both of which are listed on the contraband removal record. *Id.*; Contraband Removal Record (ECF No. 54-10, PageID. 344). Stevenson issued plaintiff a Class III misconduct, and plaintiff was found guilty of possession of contraband, noting that they were owned by plaintiff

9

and "clearly homemade", being "hand stitched and made from material commonly found inside of prison and are altered from their original state thus making them contraband." Misconduct Hearing and Report (ECF No.54-10, PageID.342-343).

Plaintiff's retaliation claims fail for three reasons.  First, the underlying grievance (1889) was not protected conduct because it was frivolous and *de minimis*.  As discussed, plaintiff had no cause of action against ARUS Klatt for being transferred from his cubicle to another cubicle which plaintiff found "loud and obnoxious."  *See Scott*, 2000 WL 1434456 at *1-3 (prisoner plaintiff's threat to file a grievance for a prison guard's verbal abuse was not protected conduct for purposes of a retaliation claim; because prisoner had no constitutionally protected right to be free from verbal abuse, his threat to file a grievance was frivolous and "[would] not support a retaliation claim under *Thaddeus-X*").

Second, plaintiff has not demonstrated causation with respect to the search of his cube, *i.e.*, that CO Stevenson retaliated against plaintiff on August 24th, because plaintiff had filed a grievance against non-party ARUS Klatt back on July 26th for transferring him to a different cubicle at the prison.  Courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).  Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim; rather, a plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted).  Conclusory allegations of retaliatory motive are insufficient.  *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004).  Instead, plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred.  *See Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) ("temporal proximity alone may be significant enough to constitute indirect evidence of a

causal connection so as to create an inference of retaliatory motive") (internal quotation marks omitted).

In *Maben*, the Sixth Circuit sets forth the following procedure for determining causation on summary judgment motions based on circumstantial evidence:

> Under the third element, "[u]sually, the question of causation is a factual issue to be resolved by a jury and may be satisfied by circumstantial evidence." *Harris v. Bornhorst*, 513 F.3d 503, 519-20 (6th Cir. 2008) (citing *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996)). "Nonetheless, a court may grant summary judgment even in a causation inquiry, where it is warranted." *Hartsel*, 87 F.3d at 803 (citing *Langford v. Lane*, 921 F.2d 677, 683–84 (6th Cir. 1991)). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X*, 175 F.3d at 399 (citing *Mount Healthy*, 429 U.S. 274, 97 S. Ct. 568, 50 L.Ed.2d 471). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

*Maben*, 887 F.3d at 267. "A defendant must make this showing by a preponderance of the evidence. *King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012)." *Id.* at 262 (internal quotation marks omitted). As the Supreme Court recently held, to prevail on a retaliation claim

> It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, -- U.S. --, 139 S. Ct. 1715, 1722 (2019).

Based on this record, the Court concludes that defendant Stevenson has demonstrated that his search of plaintiff's cube was not motivated by retaliation. Stevenson performed the search of plaintiff's cubicle as one of his required searches that shift. Stevenson Aff. at PageID.294-295. During the search, Stevenson found contraband (a homemade bowtie and an altered JP5 player holder) which resulted in plaintiff being found guilty of a Class III misconduct. *See Spies*, 48 Fed. Appx. at 524-25 ("an inmate cannot immunize himself from

adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory.").

Third, plaintiff's retaliation claim is based upon Stevenson's alleged threat to "set up" plaintiff with "weapons and dangerous contraband" if he did not sign off on the grievance against ARUS Klatt and stop filing grievances. Compl. at PageID.8. Assuming that plaintiff's statements are true, there is no evidence that Stevenson engaged in the adverse action of "setting up" plaintiff with weapons and dangerous contraband. On the contrary, plaintiff possessed contraband, he got caught, and he was found guilty of possessing that contraband. For all of these reasons, defendant Stevenson should be granted summary judgment on the retaliation claim.

**CO Stevenson and CO Stephan**

After CO Stevenson confiscated the contraband on August 24, 2017, plaintiff responded by filing a grievance against Stevenson that same day, DRF 2017-08-2163-17A ("2163") (ECF No. 54-3, PageID.254-258). In grievance 2163, plaintiff complained that Stevenson retaliated against him by threatening to "set up" plaintiff (with weapons, dangerous contraband, and false tickets) and then leaving his cube in "disarray" and destroying legal property (the Walls' affidavit). Grievance 2163 at PageID.257. Plaintiff also complained that Stevenson's threats placed him in "fear [of] being set up." *Id*.

In his complaint, plaintiff alleged that after he filed grievance 2163, defendants CO Stevenson and CO Stephan verbally harassed him:

> Two days later, on August 26th, C/O Stephan called Parker out and asked why Parker had lied about C/O Stevenson in his grievance. When Parker denied that he lied, both C/O Stephan and Stevenson referred to Parker as a "f***ing Ni**er". (ECF No. 1, PageID.8 at ¶2). Finally, two more days later, on August 28th, C/O Stevenson stated to Parker, "I'm still going to kick your ass you little rat mother****er who likes to write grievances." (ECF No. 1, PageID.9 at ¶29).

Defendants' Brief (ECF No. 54, PageID.188-189).  The alleged episodes of verbal harassment by CO Stevenson and CO Stephan were not adverse actions for purposes of retaliation claims based upon plaintiff filing grievance 2163.  *See Smith v. Craven*, 61 Fed. Appx. 159, 162 (6th Cir. 2003) (verbal harassment is not an adverse action for purposes of a retaliation claim).  *See also*, discussion, *infra*.  For these reasons, defendants Stevenson and Stephan's motion for summary judgment should be granted with respect to all of the retaliation claims.

### E.     Eighth Amendment

Plaintiff also contends that CO Stevenson and CO Stephan harassed him and called him racially-derogatory names in violation of his rights under the Equal Protection Clause, the Due Process Clause, and the Eighth Amendment.   As an initial matter, plaintiff's allegations do not constitute a violation of the Equal Protection Clause.

> The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). However, in the absence of meaningful harm or an accompanying violation of rights, verbal harassment and intimidation are not sufficient to state a claim. *See Jones v. Porter*, No. 99-1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec.13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *see also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987) (holding that verbal harassment and abuse do not state a claim under § 1983).

*Austin v. Kutchie*, No. 2:18-cv-87, 2018 WL 4870874 at *2 (W.D. Mich. Oct. 9, 2018).

In addition, while plaintiff claims that the alleged verbal harassment also violated his rights under the Due Process Clause, courts review such claims under the Eighth Amendment,

which prohibit the infliction of cruel and unusual punishment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").

Here, both CO Stevenson and CO Stephan stated that the incidents did not occur. *See* Stevenson Aff. (ECF No. 54-8, PageID.294); Stephan Aff. (ECF No. 54-9, PageID.339). On the other hand, plaintiff and prisoner Jimmie Powell filed declarations stating that the incidents did occur. Parker Decl. (ECF No. 57); Powell Decl. (ECF No. 1-1, PageID.21). Viewing the evidence in the light most favorable to plaintiff, his claim fails because a prison guard's use of racially disparaging language, though reprehensible, does not amount to an Eighth Amendment violation.

> As explained by the Sixth Circuit, "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004). Although the alleged actions and comments of [defendant] may be condemned as racially disparaging and thus, deplorable, they are not unconstitutional, as "[t]he occasional use of racial slurs, although unprofessional and reprehensible, does not rise to the level of constitutional magnitude." *Jones Bey v. Johnson*, 248 Fed. Appx. 675, 678 (6th Cir. 2007) (citation and internal quotations omitted).

*Smith v. Union County Jail*, No. 3:17-CV-00346, 2017 WL 5615444 at *3 (E.D. Tenn. Nov. 21, 2017). Accordingly, CO Stevenson and CO Stephan should be granted summary judgment on this claim.

### F.     Qualified Immunity

The MDOC defendants' brief includes a claim for qualified immunity. However, their claim consists of only a recitation of the legal standard for qualified immunity followed by the conclusory statements:

14

> As argued, *supra*, Parker has failed to establish a violation of his First or Eighth Amendment rights. Since no constitutional or federal law violation has occurred, Defendants are entitled to qualified immunity.

Defendants' Brief (ECF No. 54, PageID.197). Defendants' cursory and conclusory argument is inadequately briefed and will not be considered by the Court. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

### G.    Eleventh Amendment Immunity

Plaintiff sued the individual defendants for compensatory and punitive damages in both their official and individual capacities. Plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, all defendants are entitled to summary judgment on these official capacity claims.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 53) be **GRANTED** and that this action be **TERMINATED**.

Dated:  September 26, 2019            /s/ Ray Kent
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).